[No. 18295.   Department Two.   December 1, 1924.]

ERNEST W. FRY, *Respondent*, v. GRANGERS WAREHOUSE
COMPANY OF ENUMCLAW, *Appellant*.[1]

SALES (75)—PERFORMANCE OF CONTRACT—INSPECTION AND APPROVAL. A contract for the sale of three hundred tons of hay, to be delivered in certain months, subject to inspection, is not breached by failure to have inspection made before shipment; nor by the fact that some of the first shipments contained hay below grade, and others were rejected, where settlement was made promptly on shipments accepted, and no timely claim was made terminating the contract, upon the rejection of certain shipments which the seller took over and disposed of on his own account, refunding advances (PEMBERTON, J., dissents).

Appeal from a judgment of the superior court for King county, Hall, J., entered April 7, 1923, upon findings in favor of the plaintiff in an action on contract, tried to the court. Affirmed.

[1]Reported in 230 Pac. 423.

*G. F. Vanderveer,* for appellant.

*McGregor & Fristoe* and *Van Dyke & Thomas,* for respondent.

Fullerton, J.—In the latter part of July, 1920, the respondent and the appellant entered into an oral contract whereby the respondent agreed to sell, and the appellant agreed to buy three hundred tons of No. 1 alfalfa hay of the first cutting, to be delivered f. o. b. cars at Yakima Valley stations, delivery to be made in August and September of that year. The price agreed to be paid was twenty-three dollars per ton, and was sold "subject to Seattle Merchants Exchange inspection grades." Shortly after the making of the contract, it was confirmed by letters passing between the parties.

In the early part of August following the agreement, two cars were shipped pursuant to the contract. These cars, although not inspected by the exchange, were accepted and paid for at the agreed price. At about the same time, two more cars were shipped. These, however concededly did not comply with the contract, and were billed to the appellant at a price per ton four dollars less than the contract price. The appellant refused to accept them, when the respondent immediately caused the hay to be stored to his own account, and refunded to the appellant the advancements it had made thereon by way of freight and other incidental charges.

The appellant failed to give directions for any further shipments, although repeatedly requested to do so by the respondent, the appellant answering to one such request, "Impossible to call hay now. Our sheds are full." No other directions to ship hay being received, the respondent personally visited the manager of the appellant, whereupon an agreement was reached by which the time for delivery was extended to Jan-

uary 1, 1921, which agreement was also afterwards confirmed by letters.

Thereafter, about the middle of September, the appellant ordered and there were shipped to it two carloads. This shipment was accompanied by the certificates of the inspection agency named to the effect that the hay shipped was No. 1 alfalfa hay, first cutting. On unloading the hay, some forty bales from one car were found to be caked. On complaint being made of this, the respondent had the car re-inspected by the exchange, and settled with the appellant on the basis of the discount found by the re-inspection. On November 13th, two other cars were shipped, likewise accompanied with grade certificates from the exchange inspectors. These were accepted and paid for in full at the contract price. Offer of the remainder necessary to fill the contract was made by the respondent, but the appellant declined to receive any further shipments.

Shortly following the time the original contract was entered into, the respondent contracted with growers at the then current prices for sufficient hay to fill it. The hay delivered and accepted amounted to 79 1/5 tons, and the remainder of the amount the respondent had on hand on January 1, 1921. This remainder he sold at prices ranging from $15 to $16 per ton—prices considerably less than he had paid the grower for it. In this action he sought to recover as for a loss of $5.50 per ton. The action was tried by the court sitting without a jury and resulted in a judgment in favor of the respondent for the sum of $1,200.

For a reversal of the judgment, the appellant makes two principal contentions; first, that the contract was breached by the respondent; and, second, that the evidence does not justify the finding of the court that the

respondent had on hand sufficient hay of the quality and cutting specified to fulfill the contract.

The claimed breach of the contract is founded on the fact that two of the first four of the cars shipped were of inferior hay, and were not accompanied by certificates of the inspectors. But an examination of the contract will show that it was not a condition precedent to the shipment of the hay that an inspector's certificate accompany the shipment. The contract does not specify when or where the inspection is to be made. It could, therefore, be made after shipment as well as before. If any shipment of hay not accompanied by the certificate was refused, the respondent possibly could not compel its acceptance without proof that it complied with the contract in the manner specified, but he was at liberty to make this proof after rejection.

But the question is, we think, without materiality in any event. Of the cars shipped without such a certificate, two were accepted and paid for. Two were rejected, but as to these the respondent made no contention that the quality of the hay contained in them complied with the contract. On their rejection he took them over himself, disposed of them on his own account, refunding to the appellant such outlay as it had made on account of the shipment. It hardly seems that this incident would then have warranted the appellant in declaring the contract at an end had it acted timely, but clearly it cannot do so after accepting this manner of settlement, and later recognizing the contract as existent. The subsequent deliveries were accompanied by certificates, and these were conclusive as to the quality of the hay, and were not subject to impeachment by testimony merely showing that the hay did not comply therewith. Nothing short of a showing that the certificates were fraudulently procured would accomplish this result.

On the second contention, we are unable to agree with the appellant's interpretation of the evidence. In our opinion, the evidence very clearly shows that the respondent had on hand at all times sufficient hay to fulfill the contract, and that this hay he held over until the appellant made it clear that it would not accept delivery.

The judgment is affirmed.

MAIN, C. J., MACKINTOSH, and MITCHELL, JJ., concur.

PEMBERTON, J. (dissenting)—In my opinion the evidence does not support the finding of fact.